**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**NEW HAVEN DIVISION**

| | | |
|---|---|---|
| **GAIL A. WASHBISH,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **NO. 3:21-CV-01521 (AWT)** |
| **v.** | : | |
| **INTERNATIONAL BUSINESS MACHINES CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

**FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

1. Plaintiff worked for Defendant International Business Machines Corporation (hereinafter "IBM") until her termination. Plaintiff has alleged that she was discriminated against on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq*.

2. As set forth below, Plaintiff seeks to recover for violations of the age discrimination statutes (Counts I and II).

3. Plaintiff also seeks declaratory relief, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and a finding that the timing provisions in IBM's arbitration agreement are unenforceable and that IBM has waived its right to arbitrate by refusing to arbitrate the merits of Plaintiff's age discrimination claims (Count III).

4. Plaintiff further alleges that, upon her termination, she was fraudulently induced by IBM to enter into an agreement that provided a modest severance payment in exchange for a

release of most legal claims (but not a federal ADEA claim) and which required her to pursue any federal ADEA claim in individual confidential arbitration (Count IV).

## II. <u>ALLEGATIONS RELATED TO IBM'S AGE DISCRIMINATION AGAINST PLAINTIFF</u>.

5. At all times material hereto, the Plaintiff, GAIL A. WASHBISH, is an individual residing in Shelton, Connecticut. She was born on June 20, 1954.

6. At all times material hereto, the Plaintiff, GAIL A. WASHBISH, was an "employee" of the Defendant, INTERNATIONAL BUSINESS MACHINES CORPORATION, as that term is defined in the Connecticut Fair Employment Practices Act, C.G.S. § 46a-51(9).

7. The Defendant, INTERNATIONAL BUSINESS MACHINES CORPORATION, (hereinafter called, "IBM") is a New York corporation with a principal place of business at New Orchard Road, Armonk, NY 10504, and with a branch office/facility at 150 Kettletown Road, Southbury, CT 06488. The Defendant employs more than three people and is an "employer" as that term is defined in the Connecticut Fair Employment Practices Act, C.G.S. § 46a-51(10).

8. At all times material hereto, the Defendant, IBM, was duly authorized to conduct business in the State of Connecticut and did, in fact, conduct business in the State of Connecticut.

9. From 1996 until August 17, 2016, the Plaintiff, GAIL A. WASHBISH, worked for the Defendant, IBM, in its Southbury, Connecticut office/facility, at 150 Kettletown Road, as a systems engineer. The Plaintiff, GAIL A. WASHBISH, was an outstanding employee for the Defendant, IBM, and received favorable job performance evaluations.

10. On August 17, 2016, the Plaintiff, GAIL A. WASHBISH, was terminated by the Defendant, IBM. At the time of said termination, the Plaintiff, GAIL A. WASHBISH, was

sixty-two (62) years of age.

11. At the time of said termination, the Plaintiff, GAIL A. WASHBISH, was told by representatives of the Defendant, IBM, that she was terminated because her job position as a systems engineer was being moved from its Southbury, Connecticut office/facility to an IBM office/facility in the country of Costa Rica.

12. When the Plaintiff, GAIL A. WASHBISH, was terminated from her employment by the Defendant, IBM, on August 17, 2016, she received a severance pay of thirty (30) days salary.

13. Not long after her termination, the Plaintiff, GAIL A. WASHBISH, learned that her job position as systems engineer was not transferred to an IBM office/facility in Dubuque, Iowa. Said job position was also filled by a person of younger age with less experience than the Plaintiff, GAIL A. WASHBISH.

14. On or about April, 2017, the Plaintiff, GAIL A. WASHBISH, filed a Complaint against the Defendant, IBM, with the United States Equal Employment Opportunity Commission (hereinafter called, "USEEOC") in its New York district office. Said Complaint was based on discrimination against the Plaintiff, GAIL A. WASHBISH, by the Defendant, IBM, because of her age.

15. On July 19, 2021, the Plaintiff, GAIL A. WASHBISH, received a letter from the USEEOC, New York district office, indicating that said Commission found that she was discriminated against in violation of the Federal Age Discrimination in Employment Act in that she was discharged based on her age. A copy of said letter is marked Exhibit A and is attached hereto.

16. The Plaintiff, GAIL A. WASHBISH's, age was the motivating factor in the

Defendant, IBM's, decision to terminate her.

17. The Defendant, IBM, stated reason for terminating the Plaintiff, GAIL A. WASHBISH, namely, that her job was being transferred to an IBM office/facility in Dubuque, IA, was false, and was used to justify the Defendant, IBM's, discriminatory firing of the Plaintiff, GAIL A. WASHBISH.

18. By the acts and practices described above, the Defendant, IBM, has discriminated against the Plaintiff, GAIL A. WASHBISH, in violation of the Connecticut Fair Employment Practices Act, C.G.S. § 46a-60(a)(1) *et seq* and the Federal Age Discrimination in Employment Act (ADEA).

19. As a result of the Defendant, IBM's, discriminatory conduct, as aforesaid, the Plaintiff, GAIL A. WASHBISH, has suffered lost wages and other perquisites of employment, and lost career opportunities. The Plaintiff, GAIL A. WASHBISH, has and continues to experience pain and suffering and emotional distress as a result of the Defendant, IBM's, conduct and has had to incur attorneys' fees and costs in bringing this action.

20. As a result of the Defendant, IBM's, discriminatory conduct, as aforesaid, the Plaintiff, GAIL A. WASHBISH, has suffered monetary damages.

## III. ALLEGATIONS RELATED TO THE TIMING PROVISIONS IN IBM'S ARBITRATION'S AGREEMENT AND IBM'S REFUSAL TO ARBITRATE THE MERITS OF PLAINTIFF'S CLAIMS.

21. Following an extensive investigation by the U.S. Equal Employment Opportunity ("EEOC") that lasted years, Plaintiff Gail Washbish received a "right to sue" letter dated July 19, 2021 informing her: (1) that the EEOC "found [she was] discriminated against in violation of the

ADEA in that [she] was discharged based on her age"[1]; and (2) that she was required to initiate a lawsuit within 90 days to preserve her statutory rights.

22. Plaintiff did as the EEOC instructed and filed her age discrimination complaint in Connecticut Superior Court, a court of competent jurisdiction, on October 14, 2021.

23. Defendant International Business Machines Corporation ("Defendant" or "IBM") removed Plaintiff's complaint to this federal court and filed a motion to dismiss on November 19, 2021, arguing the Plaintiff must arbitrate her claims.

24. In seeking to compel Plaintiff to arbitration and dismiss her case with prejudice, IBM does not hide its scheme to stymie Plaintiff's efforts to vindicate her statutory rights in arbitration. IBM freely admits that it will argue in arbitration that Plaintiff's "ADEA claim is time-barred and has little likelihood of success." Dkt. 13 at 7.

25. IBM is refusing to arbitrate the merits of Plaintiff's ADEA claims. Instead, IBM claims that Plaintiff's claims are "time-barred" and with "little likelihood of success" when Plaintiff indisputably filed timely charges with the EEOC and timely asserted her claims within the statutory period required by the EEOC and ADEA.

## IV. ALLEGATIONS RELATED TO FRAUDULENT INDUCEMENT.

26. In 2012, Virginia ("Ginni") Rometty became the President and CEO of IBM.

27. In approximately June 2013, Ms. Rometty promoted a senior human resources

---

[1] See Ex. A to Plaintiff's Complaint. Plaintiff's charge was one of many similar charges of age discrimination filed with the EEOC in recent years. Indeed, in August 2021, the EEOC issued a determination letter indicating that the EEOC's extensive investigation into IBM revealed systemic age discrimination at IBM being directed from the "highest ranks." See EEOC Determination Letter dated August 31, 2020, at 2, attached hereto as Ex. 1.

executive, Diane Gherson, to the position of Senior Vice President and Chief Human Resources Officer ("CHRO"). Ms. Gherson communicated directly and frequently with Ms. Rometty and was responsible for implementing and executing Ms. Rometty's policies and agenda concerning the structuring of IBM's workforce.

28. Ms. Rometty desired to aggressively alter the age demographics of IBM's workforce by targeting older workers for adverse employment actions, such as layoff programs (referred to as "Resource Actions" at IBM), as well as other actions that were intended to lead to their termination or constructive discharge (such as giving employees the "option" of continuing their employment by relocating across the country, when IBM knew that very few employees would accept this "option").

29. Ms. Rometty, unbeknownst to the rank-and-file workforce she led (as well as many of its managerial employees), harbored deep animus toward IBM's older workers. Ms. Rometty hid her discriminatory animus from much of IBM's rank-and-file workforce. However, she directly communicated "behind closed doors" with executives such as Ms. Gherson regarding her discriminatory plans to exit older workers from the company because of their age, and Ms. Gherson helped implement the scheme to shift the company's demographics towards younger employees.

30. IBM is a highly sophisticated and well-resourced company. Over a period of years, extending back at least to 2013, IBM devised and implemented this scheme to conceal its discriminatory programs to oust older workers from the company and shift its age demographics to younger workers.

31. Around approximately 2014, IBM decided that it would no longer provide its laid off workers information required by the Older Workers' Benefits Protections Act ("OWBPA"),

29 U.S.C. § 626(f)(1)(H) because such information could enable IBM's laid off workers to discover IBM's discriminatory scheme and expose the true purpose behind the structuring of IBM's programs, including Resource Actions, to target and exit older workers so as to make room for a younger workforce as desired by IBM's CEO.

32. In 2014, when IBM announced its unorthodox refusal to provide OWBPA information with its separation agreements, IBM had its spokesperson provide pretextual and untruthful rationales in order to mislead IBM's workforce into believing that the change in policy was being done to protect their privacy interests.[2] For example, IBM spokesperson Doug Shelton assisted IBM in misleading its workforce by claiming that the change was made to address "concerns raised by employees that the age/title information the company previously provided infringed on employee privacy." See https://www.insurancejournal.com/news/national/2014/05/13/328904.htm. IBM executives instructed Mr. Shelton to provide information that was misleading to IBM employees. In reality, this decision was made to conceal the aggressive discriminatory layoff scheme IBM had been and would continue engaging in for a period of years.

33. IBM also made changes to its separation agreements in approximately 2014 or 2015 that would require employees to bring their claims under the ADEA in individual arbitration, while releasing nearly all other claims.

34. IBM's decision to require individual arbitration was also made with the known purpose to conceal IBM's discriminatory scheme and make it more burdensome (if not all but

---

[2] Indeed, IBM had never disclosed the names of laid off employees prior to this change - merely their ages and position titles.

impossible) for individuals to prove IBM's plainly discriminatory layoff scheme and high-level policies and practices. IBM's executives understood that the decision to require individual confidential arbitration would assist them in their efforts to conceal IBM's discriminatory patterns and practices and mislead laid off workers because it would make it difficult for employees to amass pattern and practice evidence of the broad-based discriminatory scheme in which IBM engaged and would hinder their ability to prevail on claims under the ADEA.

35. In order to convince the victims of its discriminatory scheme to sign a separation agreement in which they would waive their rights to pursue any claims in court (and could instead only pursue claims of age discrimination in individual arbitration, where IBM would aggressively block their sharing of evidence with other employees pursuing similar claims), IBM fraudulently and in bad faith represented to its employees that they were being laid off for legitimate business reasons (or that the circumstances leading to their constructive discharges – for example, being offered a "choice" to remain with the company but relocate to another part of the country — were the result of legitimate business reasons).

36. For example, IBM provided employees with template letters indicating that the company was required to lay them off due to their allegedly unneeded skills and/or the company's decision to move in a different business direction. IBM provided these pretextual explanations to conceal the fact that the Resource Actions were knowingly structured in a discriminatory manner to further the CEO's discriminatory goals to shift the age demographics of the company toward a younger workforce.[3]

---

[3] See Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico., Inc., 999 F.3d 37, 58 (1st Cir. 2021) (even an employer who has a "compelling reason wholly unrelated to the [age] of any of its employees to reduce the size of its work force may still be liable under the ADEA if it use[s] the occasion as a convenient opportunity to get rid of its [older] workers.") (citations and

37. Indeed, although IBM claimed that these Resource Actions were so-called "reductions in force", IBM was simultaneously hiring and recruiting younger workers to replace employees in the targeted protected age group who were being purged through the layoffs.

38. IBM executives knowingly planned hiring and recruitment programs targeted at younger workers, right around the time of IBM's simultaneous termination programs, while informing the terminated employees within the protected age group (over age 40) that their layoffs were necessary as part of a large corporate downsizing.

39. IBM executives, such as Ginni Rometty, Diane Gherson, and other senior human resources executives reporting directly to Ms. Gherson knowingly and carefully guarded demographic data and information that might lead others within IBM's organization to discover their discriminatory policies and practices. IBM executives knowingly concealed details of their discriminatory scheme from lower-level managers and representatives so that its lower-level managers and representatives could carry out IBM's targeted Resource Actions without even knowing that they were being forced to terminate targeted workers from a proverbial "stacked deck" of individuals within the protected age group.

40. IBM further coached low-level managers to parrot pretextual, pre-determined rationales for the need for the Resource Actions resulting in the employees' termination. However, IBM did not provide these low-level managers with information regarding the true

---

internal quotation marks omitted); Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1195 (7th Cir. 1997) (accord); see also Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005) (an age discrimination plaintiff can "present circumstantial statistical evidence regarding age; or evidence that the employer's plan was subterfuge for discrimination, such as evidence that an employee-rotation plan existed which shifted protected workers into jobs most likely to be cut in the reduction in force.").

purpose of their discriminatory layoff scheme, and thus IBM relied on low-level managers to fraudulently convey misleading information in order to induce Plaintiff and other similarly situated employees to sign IBM's standard separation agreement.

41. IBM's carefully crafted scheme was designed to fraudulently mislead its workforce, with the exception of the relatively small number of senior executives who were privy to the decisions made to target older workers (and privy to the hard statistical data that executives monitored to ensure their policies and practices were achieving their discriminatory ends).

42. Plaintiff and other similarly situated employees would never have signed IBM's separation agreement had they known that IBM terminated them in a Resource Action that was part of a larger scheme of blatant and systematic age discrimination and that, by signing such agreement, they would be giving up their ability to effectively pursue claims that they were victims of systemic age discrimination.

**FIRST COUNT: VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES, ACT, C.G.S. § 46a-60(A)(1) – AGE DISCRIMINATIONIN EMPLOYMENT**

Paragraphs 1 through 42, as set forth above, are hereby reincorporated.

43. By the acts and practices described above, the Defendant, IBM, has discriminated against the Plaintiff, GAIL A. WASHBISH, in violation of the Connecticut Fair Employment Practices Act, C.G.S. § 46a-60(a)(1) *et seq* and the Federal Age Discrimination in Employment Act (ADEA).

44. As a result of the Defendant, IBM's, discriminatory conduct, as aforesaid, the Plaintiff, GAIL A. WASHBISH, has suffered lost wages and other perquisites of employment, and lost career opportunities. The Plaintiff, GAIL A. WASHBISH, has and continues to

experience pain and suffering and emotional distress as a result of the Defendant, IBM's, conduct and has had to incur attorneys' fees and costs in bringing this action.

45. As a result of the Defendant, IBM's, discriminatory conduct, as aforesaid, the Plaintiff, GAIL A. WASHBISH, has suffered monetary damages

**SECOND COUNT: VIOLATION OF THE FEDERAL AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA) (JURY DEMANDED)**

Paragraphs 1 through 45, as set forth above, are hereby reincorporated

46. By the acts and practices described above, the Defendant, IBM, has discriminated against the Plaintiff, GAIL A. WASHBISH, in violation of the Age Discrimination on Employment Act (ADEA).

47. As a result of the Defendant, IBM's, discriminatory conduct, as aforesaid, the Plaintiff, GAIL A. WASHBISH, has suffered lost wages and other perquisites of employment, and lost career opportunities. The Plaintiff, GAIL A. WASHBISH, has and continues to experience pain and suffering and emotional distress as a result of the Defendant, IBM's, conduct and has had to incur attorneys' fees and costs in bringing this action.

48. As a result of the Defendant, IBM's, discriminatory conduct, as aforesaid, the Plaintiff, GAIL A. WASHBISH, has suffered monetary damages.

**THIRD COUNT: DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-02.**

Paragraphs 1 through 48, as set forth above, are hereby reincorporated.

49. An actual controversy of sufficient immediacy exists between the parties as to whether the timing provisions within IBM's arbitration agreement, which, at least insofar as IBM construes it, severely undermines or extinguishes Plaintiff's ability to pursue a claim under the

ADEA, is enforceable. Plaintiff seeks a declaratory judgment that the timing provision in IBM's arbitration agreement is unenforceable.

50. Plaintiff further seeks a declaration that IBM has waived its right to arbitration by refusing to arbitrate the merits of Plaintiff's ADEA claims.

**FOURTH COUNT: FRAUDULENT INDUCEMENT (JURY DEMANDED)**

Paragraphs 1 through 50, as set forth above, are hereby reincorporated.

51. By the acts and conduct described above, IBM has fraudulently induced Plaintiff to waive her right to pursue ADEA claims in court and require her instead to pursue such claims in individual confidential arbitration only.

**WHEREFORE, the Plaintiff seeks the following relief:**

AS TO THE FIRST COUNT: VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-60 *et seq.*

1. Lost wages, pursuant to C.G.S. § 46a-60 *et seq.*;
2. Reinstatement or front pay, in lieu of reinstatement, pursuant to C.G.S. § 46a-60 *et seq.*;
3. Compensatory damages, including back pay with interest and lost benefits, emotional distress and mental anguish, pursuant to C.G.S. § 46a-60 *et seq.*;
4. Attorneys' fees, costs, pre- and post-judgment interest, pursuant to C.G.S. § 46a-60 *et seq.*; and
5. Such other and further relief as the court deems just and proper.

AS TO THE SECOND COUNT: VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA)

1. Lost wages, benefits and other perquisites of employment;
2. Compensatory damages;

3. Punitive damages;

4. Attorneys' fees and costs;

5. Interest and

6. Such other and further relief as the court deems just and proper.

AS TO THE THIRD COUNT: DECLARATORY JUDGMENT ACT:

1. A declaration that the timing provisions in IBM's arbitration agreement are unenforceable.

2. A declaration that IBM has waived the right to arbitrate by its conduct in refusing to arbitrate the merits of Plaintiff's ADEA claims.

3. Such other and further relief as the court deems just and proper.

AS TO THE FOURTH COUNT: FRAUDULENT INDUCEMENT

1. Find and declare the whole of the arbitration provision in IBM's Separation Agreement, which IBM fraudulently induced Plaintiff and similarly situated employees to enter, to be unenforceable and otherwise void.

2. Such other and further relief as the court deems just and proper.

Dated: June 23, 2022

Respectfully submitted,

GAIL A. WASHBISH,

By her attorneys,

*/s/ Zachary L. Rubin*
Zachary Rubin (ct30192)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
zrubin@llrlaw.com

AND

Eugene A. Skowronski
Law Offices of Eugene A. Skowronski
Webster Bank Building
200 Division Street
Ansonia, CT 06401
Tel. No. 203-734-3315
Juris No. 413636

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June 2022, the foregoing document was filed electronically on the Court's ECF electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF system.

*/s/ Zachary L. Rubin*
Zachary L. Rubin (ct30192)