**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
GAIL A. WASHBISH,                :
                                 :
         Plaintiff,              :
                                 :
v.                               :   Civil No. 3:21-cv-1521 (AWT)
                                 :
INTERNATIONAL BUSINESS MACHINES  :
CORPORATION,                     :
                                 :
         Defendant.              :
------------------------------ x
```

**RULING ON MOTION TO DISMISS**

Defendant International Business Machines Corporation ("IBM") has moved to dismiss plaintiff Gail A. Washbish's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion is being granted.

**I.   FACTUAL ALLEGATIONS AND BACKGROUND**

Plaintiff Gail Washbish was formerly employed as a systems engineer by defendant IBM from 1996 to 2016. On August 17, 2016, the plaintiff's employment was terminated, and she was offered severance pay in exchange for signing the Separation Agreement at issue in this case. The Separation Agreement required the plaintiff to release certain claims and submit others to mandatory arbitration within 300 days of the termination, including claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"). The plaintiff alleges that the defendant misled her by stating that her employment was

terminated because her position was being relocated to another IBM office or facility when, in reality, she was being discharged based on her age.

In April 2017, the plaintiff filed a complaint against the defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"). On July 19, 2021, the EEOC sent the plaintiff a letter stating: "We found that you were discriminated against in violation of the ADEA in that you were discharged based on your age. We asked Respondent [IBM] to resolve this matter through conciliation, however, it declined to do so." Ex. A, First Am. Compl. ("FAC") (ECF No. 41-1) at 1. The EEOC letter also stated that the plaintiff would lose her right to sue unless she filed suit "within 90 days of receipt of this letter." Id.

In late July 2021, the plaintiff filed an arbitration demand with respect to her age discrimination claim. A few months later, on October 14, 2021, the plaintiff filed a second arbitration demand. That same day, the plaintiff filed this lawsuit in Connecticut Superior Court. Defendant IBM removed the case to federal court.

The First Amended Complaint has four counts. The First Count is a claim for age discrimination in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 ("CFEPA"). The Second Count is a claim for age discrimination in violation of the ADEA. The Third Count and

Fourth Count are related to the ADEA claim. The Third Count
seeks a declaratory judgment with respect to the timing
provisions in the Separation Agreement applicable to an ADEA
claim. The Fourth Count is a claim that IBM fraudulently induced
the plaintiff to waive her right to pursue ADEA claims in court.

IBM contends that the plaintiff's ADEA and related claims
(Second, Third, and Fourth Counts) must be dismissed because the
plaintiff's Separation Agreement constitutes an enforceable
agreement to arbitrate those claims. IBM contends that the
plaintiff's CFEPA claim (First Count) must be dismissed because
the plaintiff released that claim in the Separation Agreement.

## II.  LEGAL STANDARD

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16
("FAA"), a "written provision in . . . a contract . . . to
settle by arbitration a controversy thereafter arising out of
such contract . . . shall be valid, irrevocable, and
enforceable." 9 U.S.C. § 2. "[B]efore an agreement to arbitrate
can be enforced, the district court must first determine whether
such agreement existed between the parties." Meyer v. Uber
Techs., Inc., 868 F.3d 66, 73 (2d Cir. 2017).

"The question of arbitrability usually arises in the
context of a motion to compel arbitration" pursuant to Section 4
of the FAA, which allows parties to "petition the district court
for an order directing that 'arbitration proceed in the manner

provided for in such agreement.'" Nicosia v. Amazon.com, Inc.,
834 F.3d 220, 229 (2d Cir. 2016). However, the question of
arbitrability may also arise in a motion to dismiss pursuant to
Fed. R. Civ. P. 12(b)(6). "Some district courts in this Circuit
have treated motions to dismiss based on mandatory arbitration
clauses as motions to compel arbitration" on the basis that the
defendant "manifest[s] an intention to arbitrate the dispute."
Id. at 230. On a motion to compel, the court (1) must "determine
whether the parties agreed to arbitrate," (2) must "determine
the scope of that agreement, (3) "if federal statutory claims
are asserted, it must consider whether Congress intended those
claims to be nonarbitrable," and (4) "if the court concludes
that some, but not all, of the claims in the case are
arbitrable, it must then decide whether to stay the balance of
the proceedings pending arbitration." JLM Indus., Inc. v. Stolt-
Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004). In such cases,
where "all of the claims raised in an action are subject to a
binding arbitration agreement, and where no party has sought a
stay, the court may opt to dismiss rather than to stay, the
action." Dylan 140 LLC v. Figueroa, 2019 WL 12339639, at *6
(S.D.N.Y. Nov. 8, 2019). But where a defendant's "motion to
dismiss neither sought an order compelling arbitration nor
indicated that [the defendant] would seek to force [the
plaintiff] to arbitrate in the future, it [is] not proper to

construe the motion to dismiss as a motion to compel
arbitration." Nicosia, 834 F.3d at 229. See, e.g., Bombardier
Corp. v. Nat'l R.R. Passenger Corp., 333 F.3d 250, 254
(D.C. Cir. 2003) (declining to treat Rule 12(b)(6) motion as
motion to compel arbitration where "Amtrak's motion exhibited no
intent to pursue arbitration" and "sought outright dismissal
with no guarantee of future arbitration").

"In deciding motions to compel, courts apply a 'standard
similar to that applicable for a motion for summary judgment.'"
Nicosia, 834 F.3d at 229 (quoting Bensadoun v. Jobe-Riat, 316
F.3d 171, 175 (2d Cir. 2003)). See Doctor's Assocs., Inc. v.
Alemayehu, 934 F.3d 245, 247 n.1 (2d Cir. 2019) ("In reviewing a
motion to compel arbitration, we 'consider all relevant,
admissible evidence submitted by the parties and contained in
pleadings, depositions, answers to interrogatories, and
admissions on file, together with affidavits.'" (quoting
Nicosia, 834 F.3d at 229)). "If there is an issue of fact as to
the making of the agreement for arbitration, then a trial is
necessary." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir.
2003) (citing 9 U.S.C. § 4). "[B]ut where the undisputed facts
in the record require the matter of arbitrability to be decided
against one side or the other as a matter of law, [the court]
may rule on the basis of that legal issue and 'avoid the need
for further court proceedings.'" Wachovia Bank, Nat'l Ass'n v.

<u>VCG Special Opportunities Master Fund, Ltd.</u>, 661 F.3d 164, 172 (2d Cir. 2011) (quoting <u>Bensadoun</u>, 316 F.3d at 175).

### III. DISCUSSION

#### A.   ADEA and Related Claims

The defendant seeks to have the court "enforce the unambiguous terms of the Separation Agreement by dismissing the FAC in its entirety and with prejudice." Def.'s Mem. (ECF No. 44) at 30. The plaintiff contends that the court should "find that IBM's arbitration agreement is unenforceable and permit Plaintiff to proceed in this Court" or else "declare that the timing provisions in IBM's arbitration provisions . . . are unenforceable and void, prior to compelling her to arbitration." Pl.'s Opp. (ECF No. 45) at 6.

Although the defendant's motion is styled a motion to dismiss, the defendant has expressed its intent to require the plaintiff to proceed under the agreement to arbitrate with respect to her ADEA and related claims. <u>See</u> Def.'s Mem. at 3 ("[T]his Court should enforce Plaintiff's agreement both to arbitrate her federal claim and to waive her state law claim, and dismiss this case with prejudice so that it can be resolved in the pending arbitration Plaintiff initiated."); Def.'s Reply (ECF No. 46) at 10 ("IBM simply seeks to arbitrate Plaintiff's ADEA claim under the terms of the agreement the parties signed."). Thus, with respect to the plaintiff's ADEA and

related claims, the court treats the defendant's motion as a motion to compel arbitration. See Nicosia, 834 F.3d at 229.

The threshold question is "whether the parties agreed to arbitrate." JLM Indus., Inc., 387 F.3d at 169. Under the FAA, a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. "[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement existed between the parties." Meyer v. Uber Techs., Inc., 868 F.3d 66, 73 (2d Cir. 2017).

Here, the parties agreed to arbitrate the plaintiff's ADEA claim. The plaintiff signed the Separation Agreement, see Kennedy Decl., Ex. A (ECF No. 14-1), at 4, and she does not contest its "relevance, authenticity, or accuracy," Nicosia, 834 F.3d at 231. However, the plaintiff does contest the enforceability of the Separation Agreement. She claims that it is unenforceable and otherwise void because "IBM has fraudulently induced Plaintiff to waive her right to pursue ADEA claims in court." FAC ¶ 51. See also FAC ¶¶ 26-42. The defendant contends that the plaintiff has waived her ability to challenge the enforceability of the arbitration agreement by initiating

-7-

and participating in two arbitrations without objecting to the
jurisdiction of the arbitrator. The court agrees.[1]

"If a party willingly and without reservation allows an
issue to be submitted to arbitration, he cannot await the
outcome and then later argue that the arbitrator lacked
authority to decide the matter. If, however, a party clearly and
explicitly reserves the right to object to arbitrability, his
participation in the arbitration does not preclude him from
challenging the arbitrator's authority in court." Opals on Ice
Lingerie v. Body Lines, Inc., 320 F.3d 362, 368-69 (2d Cir.
2003) (quoting AGCO Corp. v. Anglin, 216 F.3d 589, 593 (7th Cir.
2000)). "An objection to the arbitrability of a claim must be
made on a timely basis, or it is waived." ConnTech Dev. Co. v.
Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 685 (2d Cir.
1996).

IBM maintains that the plaintiff initiated two arbitrations
against it and then participated "in the proceedings, including
through briefing and argument at hearings." Def.'s Mem. at 9.
But "until Plaintiff filed her opposition brief to IBM's first

---

[1] Because the plaintiff has waived this argument, the court does
not address the defendant's arguments that the plaintiff has
failed to allege or demonstrate fraud directed at the agreement
to arbitrate, see Def.'s Mem. at 11, that she has failed to
state a claim for fraudulent inducement, see id. at 14, and that
she has failed to satisfy the heightened pleading standards of
Rule 9(b), see id. at 15.

motion to dismiss in March 2022 . . . , eight months after
filing the first arbitration, Plaintiff gave no indication that
she had any objection to the arbitral forum." Id. In her
opposition, the plaintiff characterizes her actions as "fil[ing]
arbitration demands to preserve her claims in the event that she
must ultimately arbitrate the merits of her ADEA case." Pl.'s
Mem. at 4. But nowhere in the First Amended Complaint or in her
opposition does the plaintiff refer to any action she took to
explicitly reserve the right to object to arbitrability.

    The plaintiff contends that the defendant "has waived the
right to arbitrate by its conduct." Pl.'s Opp. at 8.
Specifically, the plaintiff contends that

> since IBM has asserted to this Court that the arbitration
> agreement, by its terms, does not permit the substance
> of Plaintiff's claims to proceed in arbitration, IBM has
> effectively conceded that it does not agree to arbitrate
> her ADEA claims on the merits. This concession is
> tantamount to IBM conceding that the (timely) claims
> asserted here are not arbitrable (at least according to
> IBM) and that they therefore must be allowed to proceed
> in court since Plaintiff cannot waive her rights to
> litigate her ADEA claims.

Id. The court agrees with IBM that the plaintiff has conflated
the concepts of "not arbitrable" with "likely [to] lose in
arbitration." Def.'s Reply at 9. The cases relied on by the
plaintiff are inapposite. See Morgan v. Sundance, Inc., 142
S. Ct. 1708 (2022) (addressing waiver of right to arbitrate by
employer which had litigated employment dispute for eight months

before seeking to compel arbitration); Stanley v. A Better Way
Wholesale Autos, Inc., No. 3:17-cv-1215-MPS, 2018 WL 3872156, at
*4, *6 (D. Conn. Aug. 15, 2018) (resolving parties' dispute
"over which arbitration body--the AAA or the ARDC--is the proper
one here and whether ABW has waived its right to arbitrate"
where defendant "refused to pay the required fees to arbitrate
before the AAA or otherwise respond to the AAA's requests,
despite the AAA's repeated requests that it do so"); Schreiber
v. Friedman, 2017 WL 5564114, at *11 (E.D.N.Y. Mar. 31, 2017)
(finding defendant's "failure to submit to arbitration, delay
tactics, and noncompliance with the Rabbinical Courts' orders
amount to a waiver of his right to compel arbitration"). Rather,
this is a case where "IBM simply seeks to arbitrate Plaintiff's
ADEA claim under the terms of the agreement the parties
signed." Def.'s Reply at 10.

Because there is an agreement to arbitrate between the
parties, the court must next "determine the scope of that
agreement." JLM Indus., Inc., 387 F.3d at 169. Here, the scope
of that agreement covers the plaintiff's cause of action under
the ADEA because Section 5 of the Separation Agreement provides
in relevant part:

> You agree that any and all legal claims or disputes
> between you and IBM under the federal Age Discrimination
> in Employment Act of 1967 (ADEA) . . . will be resolved
> on an individual basis by private, confidential, final
> and binding arbitration according to the IBM Arbitration

> Procedures and Collective Action Waiver (which are
> attached and incorporated as part of this Agreement).
> . . . You understand that you are giving up your right
> to a court action for Covered Claims, including any right
> to a trial before a judge or jury in federal or state
> court.

Kennedy Decl., Ex. A, at 2.

Next, because the plaintiff asserts a federal statutory claim, the court "must consider whether Congress intended [that claim] to be nonarbitrable." JLM Indus., Inc., 387 F.3d at 169. See also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985) ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."). The plaintiff contends that Congress did not intend her ADEA claim to be arbitrable because the Separation Agreement does not comply with the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f) ("OWBPA").

Added by Congress to the ADEA in 1990, the "Older Workers Benefit Protection Act (OWBPA) imposes specific requirements for releases covering ADEA Claims." Oubre v. Entergy Operations, Inc., 522 U.S. 422, 424 (1998). The OWBPA applies to a waiver of "any right or claim" under the Age Discrimination in Employment Act. Id. (quoting 29 U.S.C. § 626(f)(1)). "The phrase 'right or claim' as used in § 626(f)(1) is limited to substantive rights

and does not include procedural ones." Estle v. Int'l Bus.
Machines Corp., 23 F.4th 210, 214 (2d Cir. 2022) (quoting 29
U.S.C. § 626(f)(1)). The "substantive right" protected by the
OWBPA "includes 'federal antidiscrimination rights' and 'the
statutory right to be free from workplace age discrimination,'
as distinguished from procedural rights, like 'the right to seek
relief from a court in the first instance.'" Id. (quoting 14
Penn Plaza LLC v. Pyett, 556 U.S. 247, 259, 265-66 (2009)).
Thus, in 14 Penn Plaza, the Supreme Court upheld an agreement
requiring a party "to resolve ADEA claims by way of arbitration
instead of litigation" because that agreement did "not waive the
statutory right to be free from workplace age discrimination."
14 Penn Plaza, 556 U.S. at 265.

The plaintiff contends that, here, the agreement to
arbitrate is unenforceable because it requires the plaintiff to
waive a substantive right but does not comply with the
requirements set forth in the OWBPA for the waiver of a
substantive right. The Separation Agreement provides in relevant
part:

> To initiate arbitration, you must submit a written
> demand for arbitration to the IBM Arbitration
> Coordinator no later than the expiration of the statute
> of limitations . . . that the law prescribes for the
> claim that you are making or, if the claim is one which
> must first be brought before a government agency, no
> later than the deadline for the filing of such a claim.
> If the demand for arbitration is not timely submitted,

the claim shall be deemed waived. <u>The filing of a charge
or complaint with a government agency . . . shall not
substitute for or extend the time for submitting a demand
for arbitration.</u>

Kennedy Decl., Ex. A, at 4 (emphasis added). The plaintiff
contends that this provision undercuts "the ADEA timing scheme,"
which "is a substantive right" that triggers "the protections of
the OWBPA." Pl.'s Opp. at 14. Because the Separation Agreement
does not comply with the OWBPA, the plaintiff contends, the
agreement is invalid as to this timing provision. The plaintiff
identifies several possible deficiencies in terms of whether the
Separation Agreement complies with the OWBPA. <u>See</u> <u>id.</u> at 16-17.

However, assuming arguendo that the plaintiff can show that
the Separation Agreement does not comply with the OWBPA, her
argument is nonetheless unavailing in light of <u>Estle</u> and its
interpretation of <u>14 Penn Plaza</u>. In <u>14 Penn Plaza</u>, the Supreme
Court addressed "whether a provision in a collective-bargaining
agreement that clearly and unmistakably requires union members
to arbitrate claims arising under the [ADEA] is enforceable." <u>14
Penn Plaza</u>, 556 U.S. at 251. The Court noted that "federal
antidiscrimination rights may not be prospectively waived," but
the Court held that the agreement to arbitrate was enforceable
because "[t]he decision to resolve ADEA claims by way of
arbitration instead of litigation does not waive the statutory
right to be free from workplace age discrimination." <u>Id.</u> at 265-

-13-

66.

   In Estle, the Court of Appeals relied on 14 Penn Plaza to
affirm the dismissal of a lawsuit against IBM which sought "a
declaration that the collective-action waiver in the separation
agreement is invalid under the ADEA." Estle, 23 F.4th at 212.
The court applied the Supreme Court's "distinction between
'substantive right[s]' and non-substantive, or procedural
rights," id. at 213, and held that "collective action, like
arbitration, is a procedural mechanism, not a substantive
right," id. at 214 (internal quotation marks and citation
omitted). The court also rejected the plaintiffs' argument that
"the plain meaning of 'any right or claim' in § 626(f)(1) is not
limited to 'substantive' rights" by noting the Supreme Court's
"unambiguous interpretation of § 626(f)(1)" in 14 Penn Plaza.
Id. at 215. Because the plaintiffs in Estle could "still bring
ADEA age discrimination claims individually," in line with the
applicable separation agreement at issue in that case, "the fact
that they may not pursue them as collective actions does not
mean that they have waived the substantive rights or claims
themselves." Id. at 214.

   Consequently, Washbish has not waived any "substantive
rights" under the ADEA, only "procedural" rights such as the
right to seek relief from a court, id., and the "protected right
of an employee to file a charge or participate in an

investigation or proceeding conducted by the [Equal Employment Opportunity] Commission," 29 U.S.C. § 626(f)(4); see also 29 C.F.R. § 1625.22(i)(3). Because the plaintiff has waived only "procedural" rights under the ADEA, she has not waived any "right or claim" under the ADEA, and the OWBPA does not apply to the Separation Agreement. 29 U.S.C. § 626(f)(1). The parties' agreement to arbitrate ADEA claims is enforceable, and arbitration must proceed in the manner provided for in the Separation Agreement. See 9 U.S.C. § 4.

**B.   CFEPA Claim**

The defendant moves to "dismiss Plaintiff's state-law claim with prejudice because Plaintiff released such claims." Def.'s Mem. at 8. Section 2 of the Separation Agreement provides in relevant part: "By signing this Agreement you release IBM from ALL claims that you may have against it at the time of signing . . . including, without limitation: . . . all state and local laws prohibiting discrimination on the basis of age." Kennedy Decl., Ex. A, at 1. Although the plaintiff asserts that "she was fraudulently induced by IBM to enter into an agreement that provided a modest severance payment in exchange for a release of most legal claims," FAC ¶ 4, the Fourth Count of the First Amended Complaint requests merely that the court "[f]ind and declare the whole of the arbitration provision in IBM's Separation Agreement . . . unenforceable and otherwise void,"

<u>Id.</u> at 13 (emphasis added). In neither the First Amended
Complaint nor the plaintiff's opposition to the motion to
dismiss does the plaintiff contest the fact that the Separation
Agreement waives any CFEPA claim or argue that a CFEPA claim
cannot be waived. <u>See</u> <u>id.</u> ¶ 51 (noting only that "IBM has
fraudulently induced Plaintiff to waive her right to pursue ADEA
claims in court"). In any event, the court concludes that the
plaintiff has waived her right to challenge the defendant's
arguments as to her CFEPA claim by failing to object to them in
her opposition to the motion to dismiss.

Therefore, the plaintiff's CFEPA claim is being dismissed.

**IV.   CONCLUSION**

Accordingly, Defendant International Business Machines
Corporation's Motion to Dismiss (ECF No. 43) is hereby GRANTED.
The First Count is dismissed with prejudice. Because the
remaining claims are subject to a binding arbitration agreement,
and no party has sought a stay, the Second, Third, and Fourth
Counts are also dismissed, and the parties shall proceed to
arbitration in accordance with the terms of the Separation
Agreement.

The Clerk shall close this case.

It is so ordered.

Dated this 9th day of March 2023, at Hartford, Connecticut.

                                    /s/AWT
                                Alvin W. Thompson
                          United States District Judge